ORIGINAL

**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAY – 9 2005

U.S. DISTRICT COURT
FLINT, MICHIGAN

CONNIE L. ASHENHURST,

        Plaintiff,

vs.                                    CIVIL NO.: 04-CV-71214-DT

COMMISSIONER OF                        HON. ROBERT H. CLELAND
SOCIAL SECURITY,                       MAG. JUDGE WALLACE CAPEL, JR.

        Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is recommended that the Court grant Defendant's Motion for Summary Judgment and enter

judgment for Defendant.

### II.   REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying

Plaintiff's application for a period of disability, disability insurance benefits, and supplemental

security income. Plaintiff filed for benefits on August 14, 1995, alleging that she has been disabled

and unable to work since June 21, 1995, due to depression and hypertension. (TR 44, 171-76, 462-

67). The Social Security Administration denied benefits initially and upon reconsideration. (TR 44-

46, 460-61, 468-70, 472-74). A de novo hearing was held on May 5, 1997, and continued on May

18, 1998, May 21, 1998, and June 9, 1998, before Administrative Law Judge [ALJ] Kathleen T.

Donahue. (TR 97-166). In a decision dated June 23, 1998, the ALJ denied Plaintiff benefits. (TR

75-82). The ALJ's decision was vacated by the Appeals Council on September 12, 2000. (TR 167-

69). A supplemental hearing was held on July 19, 2001, before ALJ Ethel Revels. (TR 504-51). The ALJ found on March 28, 2002, that Plaintiff was not disabled. (TR 28-39). The ALJ's decision became the Commissioner's final decision on February 27, 2004, when the Appeals Council denied review. (TR 9-11). The Plaintiff has commenced this action for judicial review.

## A.   PLAINTIFF'S TESTIMONY AT JULY 19, 2001, HEARING

Plaintiff testified she was forty-three at the time of the hearing and completed the tenth grade. (TR 509). She stated that she can read and write. (TR 509-10). She stated that she lives at 1606 Fort Park in Lincoln Park, Michigan, with her husband and three children, ages nineteen, twenty, and twenty-three. Id.

She testified that she occasionally drives about once or twice a month to get her medication at the corner store. (TR 510). She stated that her husband and daughter do the grocery shopping. Id.

She stated that the last time she worked was prior to 1995. Id. She stated that she was a housekeeper in a senior citizen home. (TR 511). She stated that she did some lifting, but she was not sure how much. Id. She stated that she would make beds sometimes, dust, and mop. Id. She explained that she had to keep "weekly records of what was done, what wasn't done, and what expense had to come out." Id. She stated that the job required her to be on her feet most of the time. (TR 512).

Prior to that, Plaintiff testified that she worked at Meijer's as a cashier and also in lay-away and receiving. Id. She stated that she also kept records there and lifted fifty to seventy pounds at the most. Id. She testified that she also used to drive a hi-lo to unload trucks at Meijer's, which is the position that required the most lifting. (TR 512-13). She stated that she earned five dollars and

2

twenty cents an hour at Meijer's and worked twenty-five to thirty hours in the winter and eighteen or twenty hours in the summer. (TR 514).

Plaintiff also stated that she worked for Taylor Living Center in 1999 for about a year and a half. (TR 513-14). She stated that she earned five dollars and thirty-five cents an hour, and worked thirty-five hours a week at that time. (TR 513).

Plaintiff explained that in 1995 she had a stroke while working. (TR 515). She stated that she was hospitalized and has had problems since then. Id. She stated that she had a speech impairment and memory loss as a result of the stroke. Id. She stated that the speech difficulty has basically resolved itself, but she still has frequent memory problems. (TR 516).

Plaintiff stated that she used to have asthma, but no longer suffers from same. Id. However, she indicated that she still has breathing problems once in a while and takes Azmacort. Id. She explained that the weather causes the breathing problems for example, when it is hot because she has no air-conditioner.[1] (TR 517).

Plaintiff stated that she has some psychiatric problems including depression. Id. She stated that the depression began when she had her stroke. Id. She stated that she is currently prescribed Paxil by Aaron Lansy for her depression. (TR 518). She explained that she was taking Xanax, but it was no longer effective and she switched to Paxil. Id. She stated that the Paxil helps "sometimes." Id. Plaintiff stated that she was seeking psychiatric help at one time, but is not any longer due to problems with her insurance. (TR 518-19). She stated that she had to pay "out-of-pocket" and could

---

[1]At this point in the testimony, Plaintiff requested to stand. (TR 517). She was standing for about forty minutes during the hearing. (TR 535). She stated that she has to alternate between sitting and standing, even at home. Id.

3

not afford the treatment. (TR 519, 541). She testified that she has not looked for treatment facilities that would allow her to pay based on her ability to do so. (TR 541).

She explained that in 1996 she was at Down River Guidance due to suicidal thoughts and crying spells. (TR 519-20). She explained: "I had shaking problems where I'd just sit and shake. I'd be off by myself where I didn't want to be around people because I just didn't want to be around anybody because I just felt helpless and useless to everything and anybody that was around me." (TR 520). She stated that her depression also caused her to lose weight because she went two or three days at a time without eating. Id.

Plaintiff testified that her depression still plagues her. Id. She stated that on a bad day, she gets stressed out and does not want to do anything. (TR 520-21). She stated that she will stay in her bed all day and sleep on these days. (TR 521). She testified that this occurs ten to eleven days in a given month. Id. She also testified that she has sleep disturbance and on average, she will go for three to four days without sleep. Id.

Plaintiff also testified that she has carpal tunnel syndrome [CTS] and migraine headaches. (TR 522). She stated that she gets migraine headaches about twice a week that cause her to get physically ill. Id. She stated that she just stays in bed with ice packs and pillows on her head as she is unable to get out of bed anywhere from two to three hours. Id. She stated that she began having the migraines after she had her stroke. (TR 523-24). She stated that she is currently on Mortin IB for the migraines. (TR 523).

4

Plaintiff testified that her CTS began a couple of years prior to the hearing. (TR 524, 526). She stated that she had surgery on her right wrist[2] about six weeks ago and she was wearing a brace on her right wrist at the time of the hearing. (TR 524). She stated that she is right-handed. Id. Plaintiff stated that she is currently having problems with her right wrist burning and experiencing sharp pain. (TR 525). She stated that she told her doctor about the symptoms the week prior to the hearing. Id.

She stated that she has difficulty holding onto objects and when she tries doing dishes, she often breaks them. Id. She stated that she can lift about two to five pounds with her right hand. (TR 526). She stated that she has a little trouble with her left hand, "but not much." Id. She stated that she could probably lift ten pounds with her left hand. Id. She stated that she takes medication for the pain in her wrists. (TR 526-27).

Plaintiff testified that she had back surgery on September 11, 2000, performed by Kevin Crawford. (TR 527). She stated that her back was better about a week after her surgery and she is currently also feeling better. Id. However, she stated that she still has a burning sensation and she can only walk a block or a block and a half before she starts getting "really sharp pains."[3] (TR 527-28). She explained that the pain goes from her lower back, down into her left leg, radiating into her ankles. (TR 528, 535). She stated that she told Dr. Crawford about this pain and his office is going to call her to set up an appointment. (TR 528).

---

[2]Plaintiff stated that she had two different surgeries on her hand as well as the removal of a cyst from the top of her hand. (TR 539).

[3]She indicated that her doctors put her on a walking regimen after her back surgery, but she never extended it more than a block and a half. (TR 539).

5

She stated that shortly after her back surgery, she was only able to stand for fifteen to twenty minutes. (TR 538, 539, 540). In the past seven months, she stated that her back started "getting bad again." (TR 540). She stated that her doctor told her that there is a "healing process" following her surgery and she needs to be rechecked, but that she will probably have pain for the rest of her life. Id.

Prior to surgery, Plaintiff stated that she tried physical therapy over the course of one month, three different times for forty-five minutes each. (TR 528-29). She stated that prior to surgery, she was taking Vicodin. (TR 529).

Plaintiff stated that her back first began to bother her about four years prior to the hearing. (TR 529, 541). She stated that she had a herniated disc in her back prior to August of 2000, when she fell.[4]  Id.  She stated that she is still taking Vicodin for her pain and it helps "somewhat," although it causes drowsiness. (TR 529-30, 535). She stated that she has to lie down for a half hour to an hour twice a day. (TR 530). She added that all her medications cause her to feel "very tired and wore out," including her Soma and Paxil. (TR 536). She stated that she told Dr. Crawford that she was having difficulty sleeping due to her depression and "everything in general." (TR 530).

Plaintiff testified that she had congestive heart failure in 1995 when she had her stroke. (TR 531). She stated that it was a one-time occurrence and she is not currently on medication for her heart.  Id.  She stated that her heart and her stroke are not currently problems for her.  Id.

Plaintiff stated that she still attends church once a month.  Id.  She stated that about a half hour into service she has to stand up and walk to get relief. (TR 532). She stated that she no longer

---

[4]She stated that this was the only fall she had. (TR 530).

6

enjoys her hobbies[5] due to lack of interest and quit playing cards about a year prior to the hearing. Id. She stated that she watches television and movies only once a week. Id. She stated that she does not fish and has not watched her family fish for about a year. (TR 533-34). She stated that she has not been camping in about two years. (TR 538). She testified that she has one friend, Pat, that she socializes with. (TR 534).

On a typical day, she stated that she sits with her daughter and listens to country western music. (TR 533). She also stated that she might go outside with her daughters, but mostly she just sits and talks with them. (TR 538). She stated that she does not cook. (TR 539).

**B.   MEDICAL EVIDENCE**

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[6]

**C.   VOCATIONAL EXPERT'S TESTIMONY**

Rita Morse, a vocational expert [VE], testified at the hearing. (TR 542-48). She classified Plaintiff's past relevant work as unskilled and light in exertion. (TR 543). The ALJ presented a hypothetical question to the VE, assuming Plaintiff's age, education, and work experience and assuming Plaintiff's testimony is credible. Id. The VE stated that such an individual would not be capable of Plaintiff's past work. Id. Further, the VE stated that Plaintiff would not be capable of any work due to the need to lie down and sleep during the day, ten to eleven days a month, as well

---

[5]Plaintiff testified that she used to do paintings on velvet. (TR 538). She stated that she also stopped reading mysteries about one year ago. Id.

[6]See Subpart E., supra, at 10.

7

as laying down for thirty minutes to an hour each day. Id. Further, the VE stated that the effects of

her medication and limitations regarding lifting, walking, sitting, and standing in combination would

be restrictive of all work. Id.

The ALJ then posed a second hypothetical to the VE, assuming Plaintiff's age, education,

and work experience and assuming

> this person can do light work. However, there are the additional limitations that our
> hypothetical Claimant needs a position which does not require her to sit more than
> a half an hour at a time, stand more than 10 to 15 minutes at a time, or walk more
> than one and a half blocks at a time. There is also some pain - - a degree of pain
> which the hypothetical Claimant suffers with, which I would rate as creating a
> moderate limitation in the ability to maintain attention and concentration. There is
> also a degree of depression, which I would rate as creating a moderate degree - - a
> moderate limitation in the ability to understand, remember, and carry out detailed
> instructions. These last two limitations would restrict our hypothetical Claimant to
> simple, routine-type tasks. Our hypothetical Claimant also needs a position which
> does not require frequent bending, crouching, or squatting, nor climbing of ropes,
> ladders, or scaffolds. There is a need for a low stress setting and I would define that
> as one where she's not required to work with the general public or in close proximity
> to co-workers. Our hypothetical Claimant also needs a position which does not
> require the use of vibrating tools.

(TR 543-44). The VE testified that under those conditions Plaintiff could perform approximately

2,000 checker/examiner positions at the light exertion.   (TR 544).   The ALJ posed a third

hypothetical to the VE, assuming Plaintiff's age, education, and work experience and assuming

> further that I find that this person can do sedentary work. However, there are the
> additional limitations as outlined earlier. . . . And that was the limitations were [sic]
> low-stress setting, which I defined as no work with the general public or in close
> proximity to co-workers. No use of vibrating tools. No frequent bending, crouching,
> or squatting, no climbing of ropes, ladders, or scaffolds, as well as the need for
> simple, routine-type tasks, and a sit/stand option whereby there is not the requirement
> to sit more than a half an hour at a time or stand more than 15 minutes at a time or
> walk further than one and a half blocks.

(TR 545). The VE stated that approximately 2,000 inspection positions, approximately 12,000 bench work assembly positions, and approximately 2,000 surveillance positions existed under sedentary. Id.

Plaintiff's counsel then questioned the VE. (TR 545-48). He asked whether the light work allowed for a sit/stand option. (TR 546). The VE indicated that it did. Id. The VE stated that there would not be lifting over five pounds in the jobs that were identified. Id. She explained that there was a crossover in terms of what makes the jobs light versus sedentary. Id. She stated that she received her information from a variety of documentation including the Department of Labor and the Bureau of Statistics. Id. Plaintiff's counsel questioned the VE regarding the level of concentration required of the jobs that were identified. (TR 546-47). The VE explained that the jobs would require maintaining concentration to do what is simple and routine. (TR 547). Plaintiff's counsel asked whether the inability to maintain concentration and attention as described by Dr. Cho's report would preclude all work. Id. The VE stated that it would. Id. The VE stated that the jobs listed require a person to function independently. Id. The VE stated that the stresses of the jobs listed are "getting to work and doing your job." Id. Plaintiff's counsel asked whether the surveillance position would be stressful. (TR 547-48). The VE stated that "[i]t may cause some stress." (TR 548). Plaintiff's counsel then asked about the assembly positions and the pace required. Id. The VE stated that if someone could not keep up the pace required for the assembly job, then they would not be capable of doing that job. Id. The VE testified that the inspector position requires productivity seventy percent of the time. Id.

9

## D.   ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff "has the impairments of depression, bilateral carpal tunnel syndrome, is status post a stroke with residuals, and herniated disc status post discectomy." (TR 30). However, the ALJ found that she does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulation No. 4. (TR 30, 37). The ALJ found Plaintiff not to be fully credible. (TR 35, 38). Thus, he determined that Plaintiff had the residual functional capacity ["RFC"] to perform a range of light work

> with no sitting more than ½ an hour at a time; no standing more than 15 minutes at a time; no walking over 1.5 blocks; with pain that causes moderate limitations in concentration, persistence, or pace; depression which causes moderate limitations in her ability to understand, remember, and carry out detailed work; limited to simple, routine work; no frequent bending, crouching, or squatting; no climbing ropes, ladders, or scaffolding; at a low stress job, i.e., no work with the general public or in close proximity to coworkers; and with no use of vibrating tools.

(TR 38). Therefore, the ALJ concluded that Plaintiff is not eligible for disability. (TR 37-38).

## E.   ANALYSIS

Plaintiff advances several claims in her Motion for Summary Judgment. Her Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to properly evaluate Plaintiff's treating physicians' opinions, substituting her own "medical expertise;" (2) the ALJ discounted Plaintiff's credibility; and (3) the ALJ failed to give proper weight

to the VE's testimony.[7]  In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[8]  The matter is now ready for decision.

### 1.  Standard of Review

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g) (1997).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished).  Applying these standards, I will analyze each of Plaintiff's claims.

---

[7]Plaintiff's Motion for Summary Judgment and Brief filed July 6, 2004 (hereinafter "Plaintiff's Brief"), at pages 14-23.

[8]Defendant's Motion for Summary Judgment and Brief filed September 30, 2004 (hereinafter "Defendant's Brief"), at pages 11-18.

### a.    Treating Physicians

Plaintiff alleges that the ALJ did not give the proper weight to her treating physicians' opinion and substituted her own medical opinion.[9]  This Court is well aware that the medical opinions and diagnoses of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted. King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984).

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

Bankston v. Comm'r of Soc. Sec., 127 F.Supp. 2d 820, 824 (E.D. Mich. 2000).  However, such deference is due only if the treating physician's opinion is based on sufficient medical data. See 20 C.F.R. § 404.1529. It is often misunderstood that the determination of disability is the prerogative of the Secretary, and not the treating physician. Kirk v. Sec'y Of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986); 20 C.F.R. § 404.1527. An ALJ may reject a physician's opinion when it is brief, conclusory, or not supported by medically acceptable clinical or laboratory diagnosis techniques. 20 C.F.R. § 404.1527(d)(2). Accordingly, treating physicians' opinions must be grounded on objective medical evidence, and no deference need be afforded those opinions if they are simply conclusory. Houston v. Sec'y of Health and Human Servs., 736 F.2d 365, 367 (6th Cir. 1984); Duncan, 801 F.2d at 855 (citing King, 742 F.2d at 973). In other words, the weight to be given a doctor's opinion by an ALJ will depend on the extent to which it is supported by "specific and complete clinical findings." Giddings v. Richardson, 480 F.2d 652, 656 (6th Cir. 1973). See also Cutlip v. Sec'y of Health and

---

[9]Plaintiff's Brief at pages 14-18.

Human Servs., 25 F.3d 284, 287 (6th Cir. 1994) (citing Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir.1990)).

Nonetheless, Plaintiff presents no evidence of specific findings by physicians which were rejected. Plaintiff reiterates the medical diagnosis and the ALJ's findings.[10] The repeated medical evidence states nothing about the severity of the alleged impairment, as in Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988), the Court stated, "[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir.1988) (diagnosable impairment not necessarily disabling)." Further, as Defendant argues,[11] "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to....put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

Plaintiff also argues that the ALJ did not credit Dr. Blanzy's opinion that Plaintiff was disabled.[12] It is important to keep in mind that the Regulations clearly state that, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). Furthermore, Dr. Blanzy's statements in this regard are conclusory and unsupported by clinical data. They are merely recited in a "to whom it may concern note" containing approximately forty words. (TR 417, 433). Therefore, Dr. Blanzy's opinion regarding Plaintiff's disability status is not entitled to controlling weight.

---

[10]Plaintiff's Brief at pages 14-16.

[11]Defendant's Brief at pages 13-14.

[12]Plaintiff's Brief at page 17.

**b.    Credibility**

Plaintiff alleges that the ALJ erred in assessing her credibility.[13]   In order to determine

disability based on subjective complaints and limitations, there must be a two prong analysis.

> [T]he court explained this standard:  "In evaluating subjective complaints of
> disabling pain, this court looks to see whether there is objective medical evidence of
> an underlying medical condition, and if so then, 1) whether objective medical
> evidence confirms the severity of the alleged pain arising from the condition; or, 2)
> whether the objectively established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain."

McCoy on Behalf of McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995) (quoting Stanley v. Sec'y of

Health and Human Servs., 39 F.3d 115, 117 (6th Cir.1994) (citing Jones v. Sec'y of Health and

Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991) and (quoting Duncan v. Sec'y of Health and

Human Servs., 801 F.2d 847, 855 (6th Cir. 1986)).  Further,

> When determining credibility, in addition to the objective medical evidence, the ALJ
> must also consider:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other
> symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual
> takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief
> of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain
> or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20
> minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and
> restrictions due to pain or other symptoms.

---

[13]Plaintiff's Brief at page 17.

Ridge v. Barnhart, 232 F.Supp.2d 775, 790-91 (N.D. Ohio 2002). Although "[c]redibility determinations rest with the ALJ,"[14] "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." See Auer v. Sec'y of Health & Human Servs., 830 F.2d 594, 595 (6th Cir.1987); Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). In addition, "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984). Hurst v. Sec'y of Health and Human Servs., 753 F.2d 517, 519 (6th Cir.1985). As Social Security Ruling [SSR] 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D.Mich., Aug. 3, 2004) (slip copy).

Specifically, Plaintiff alleges that the ALJ's justification for finding her not fully credible is due to the fact that she missed appointments and her treatment was family centered.[15] However, the ALJ stated:

> the objective medical evidence does not come close to supporting the very severe symptomalogy alleged by the claimant. Several conspicuous inconsistencies have been pointed out within the body of the decision. Such inconsistencies detract from the claimant's credibility as a whole.

(TR 35). The ALJ pointed out that she reported a need to lie down due to pain, but never sought care or treatment from her orthopedic surgeon for same. Id. Further, the ALJ pointed out that Plaintiff's

---

[14]See Siterlet v. Sec'y of Health and Human Servs., 823 F.2d 918, 920 (6th Cir. 1987) (per curiam). Price v. Comm'r of Soc. Sec., 234 F.3d 1269, 2000 WL 1648129, *2 (6th Cir. 2000) (unpublished disposition; Table).

[15]Plaintiff's Brief at page 17.

back problems have been resolved following surgery in September 2000, according to the medical reports. Id. Additionally, the ALJ found that Plaintiff's ability to do daily activities was only mildly limited. (TR 34).

> The ALJ may have been wrong, but he was not unclear; after listening to what [Plaintiff] said on the witness stand, observing his demeanor, and evaluating that testimony in the light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [Plaintiff] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment.

Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). The "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). The ALJ's decision was based on substantial evidence; thus, this Court cannot challenge that finding. Williamson v. Sec'y of Health and Human Servs., 796 F.2d 146, 150 (6th Cir. 1986) ("The ALJ expressly found Williamson's testimony not worthy of credit, and such credibility determinations ordinarily are given deference by the court.").

### c.  VE Testimony

Plaintiff alleges that the hypothetical posed to the VE was incomplete and defective under Howard v. Comm'r of Soc. Sec., 276 F.3d 235 (6th Cir. 2002), and Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987), among other cases. Plaintiff also asserts that the ALJ's finding that a significant number of jobs exist is flawed because when the VE testified

16

regarding the limitations[16] in Sung Ran Cho, M.D.'s report, she stated that all work would be precluded.[17] Recently, the Sixth Circuit has clarified what a hypothetical should include:

> In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. Foster, 279 F.3d at 356. In Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004). Plaintiff alleges that the ALJ failed to include all the limitations that Dr. Cho described.[18] However, the ALJ discussed Dr. Cho's consultative psychiatric examination and carefully considered it. (TR 33).

The ALJ found that although Dr. Cho found that Plaintiff "had difficulty during sensorium and memory testing, marked by answering the questions very slowly, the evidence does not support the severity of her allegations." (TR 33-34). The ALJ noted that even the evidence within that same report by Dr. Cho states that Plaintiff "was able to recall 4 digits forward and three digits backwar[d] (Exhibit 22F). Further, in October, 1995, the claimant was able to recall 3/3 objects after three minutes and three digits forward, which demonstrates her capacity for attending to tasks (Exhibit 5F)." (TR 34). Additionally, the ALJ discusses Dr. Wallace's consultative report, which conflicts with Dr. Cho's findings. Id. The ALJ stated that Dr. Wallace found that Plaintiff "was able to complete a 10 page personal, social, and medical history without difficulty." Id. The ALJ also noted in disregarding Plaintiff's full scale IQ of 67, which would place her in the mild mentally retarded

---

[16]Specifically, the VE testified that a complete inability to concentrate or maintain attention and function independently would preclude all work. (TR 547).

[17]Plaintiff's Brief at pages 20-21.

[18]Plaintiff's Brief at page 21.

range, "that [this] IQ testing [was] performed by Dr. Wallace, [who stated that it] was not valid due

to the claimant's hasty and easily distracted work (Exhibit 21F). Although the claimant had a stroke

in June, 1995, the resulting cognitive residuals do not appear as limiting as the claimant alleges."

Id. Therefore, the ALJ's RFC was not flawed in assessment of the consultative report, when read

in its entirety and along side Dr. Wallace's consultive report. Rather, the ALJ's evaluation of same

is based on substantial evidence as reflected in her decision and her questions to the VE.

> The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination. Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise. Accordingly, in light of the facts present in Howard, this circuit's prior case law, and the role of a vocational expert under the social security regulations, we do not read Howard to hold that hypothetical questions to vocational experts are required to include lists of claimants' medical conditions.

Webb, 368 F.3d at 633.

Regardless, as in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

See also, Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 118-19 (6th Cir. 1994). The

ALJ determines a plaintiff's restrictions. Here the ALJ found that Plaintiff was not entirely credible.

(TR 16, 18). Therefore, the ALJ was not bound by a hypothetical that assumed a level of credibility

that the ALJ himself did not assume.

Further, Plaintiff alleges that it is a combination of Plaintiff's exertional and nonexertional limitations that keep her from working and the ALJ did not consider this.[19] However, the RFC and the decision by the ALJ include references to both her exertional limitations regarding working, i.e., the inability to climb ladders, or scaffolds, and a sit/stand option, etc., as well as nonexertional limitations including pain, the need for simple, routine-type tasks, that are low-stress, etc. (TR 36, 545).

## III.   CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

## IV.   REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

---

[19]Plaintiff's Brief at page 22.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

Dated:   **MAY 0 9 2005**

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

# ORIGINAL       **FILED**

**MAY - 9 2005**

### CERTIFICATION OF SERVICE

U.S. DISTRICT COURT
FLINT, MICHIGAN

UNITED STATES OF AMERICA )          CASE NO.: 04-CV-71214-DT

                                    ) ss

EASTERN DISTRICT OF MICHIGAN   )

I, the undersigned, hereby certify that I have on the 9th day of May 2005, mailed copies of

the "Report and Recommendation," in the foregoing cause, pursuant to Rule 77(Davenport),

Fed.R.Civ.P., to the following parties:

Honorable Robert H. Cleland
United States District Judge
231 W. Lafayette, Room 707
Detroit, Michigan 48226

Kenneth F. Laritz
15501 Metropolitan Parkway
Suite 100
Clinton Township, Michigan 48036

James A. Brunson
United States Attorney's Office
101 First Street, Suite 200
Bay City, Michigan 48708

Social Security Administration
Office of the Regional Counsel
200 W. Adams, 30th Floor
Chicago, Illinois 60606

Marsha Heinonen
Deputy Clerk